534 A.2d 844

M.D.S. Laboratories and Insurance Company of North America, Petitioner *v.* Workmen's Compensation Appeal Board (Munchinski), Respondents.

Argued October 8, 1987, before Judges MACPHAIL and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Raymond F. Keisling, Will, Keisling, Ganassi & McCloskey,* for petitioners.

*K. Lawrence Kemp, Kemp & Kemp,* for respondent, Estate of Joseph A. Munchinski, Deceased.

*William F. Caruthers, Caruthers & Caruthers, P.C.,* for claimant.

OPINION BY SENIOR JUDGE BARBIERI, December 9, 1987:

M.D.S. Laboratories, Employer, and Insurance Company of North America appeal here an order of the Workmen's Compensation Appeal Board (Board), which affirmed a referee's award of benefits to Mary Jane Munchinski, widow of M.D.S. Laboratories' deceased employee, Joseph A. Munchinski, and directed payment of funeral expenses and costs to the Estate of Joseph A. Munchinski. We shall affirm.

The decedent was employed by M.D.S. Laboratories as a messenger who delivered test samples and reports to clients by company automobile and picked up samples for delivery to the employer. On December 28, 1983, Decedent was en route to pick up and deliver samples in a company car when the automobile went out of control on an icy curve and skidded sideways across the road where it was struck by a truck. Decedent was thrown out of the vehicle and killed instantly. A laboratory study of a blood sample on the same day as

the accident revealed that Decedent had a blood alcohol level of .104%.[1]

Both Decedent's widow and estate filed claims. At the time of the accident Decedent and his wife had been separated for almost a year. Decedent's widow testified that she had previously left Decedent in 1980 because of his drinking problem and obtained a court order for spousal support. In 1981, Decedent became ill with a kidney condition and his wife moved back in with Decedent to care for him until January, 1983 when she once again left due to his drinking and abuse, despite Decedent's entreaties to stay. The support order was paid until the parties reconciled in 1981. From this point on the wife made no further effort to collect support. Instead, she testified to an agreement with Decedent that as long as he would pay the mortgage and taxes on a marital property titled one-half in her two children's names and one-half as tenants by the entireties with Decedent, in which Decedent was living, she would forego support. The referee found:

> *TWENTY-SECOND:* This Referee finds that claimant was actually dependent upon her husband for support. By stipulation between the decedent and his wife it was agreed that he could discharge his support order by paying $98.48 monthly on the home mortgage, $75.63 monthly on the second mortgage and $50 monthly on the taxes. By making these payments decedent prevented a foreclosure or tax sale of the

---

[1] Under the terms of Section 624.1 of the Vehicle Code, 75 Pa. C. S. §624.1, a person with 0.10 percent or greater alcohol content in his or her blood is presumed to be under the influence of intoxicating liquor. There was expert testimony that the margin of error for the test was plus or minus 5 percent, so that a reading of .104% could possibly be reduced or added to the range of .099 to .109%. R.R. 145a.

family home of which claimant and her children by a previous marriage had the greatest interest.

. . .

Petitioners contend on appeal, first that Decedent's presumed intoxication[2] takes him out of the course of his employment, rendering his dependents ineligible for any benefits, and secondly, assuming *arguendo* that he was in employee status, his widow is not eligible to receive benefits because she was not a dependent spouse receiving a substantial portion of her support from Decedent.[3]

We first address the issue of intoxication and note that only when the intoxication is the cause of decedent's injuries or death, is the employee or any of his dependents deprived of benefits. Section 301(a), 77 P.S. §431, contains the following provision: "[N]o compensation shall be paid when the injury or death is . . . caused by the employe's violation of law, but the burden of proof of such fact shall be upon the employer. . . ." *See Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Seeley),* 110 Pa. Commonwealth Ct. 619, 532 A.2d 1257 (1987). In this case, however, the referee *did not* conclude that intoxication was the cause of the accident. Rather, he made a specific finding of fact that the accident was caused by an ice covered roadway; and our scope of review where the party with the burden of proof has prevailed is limited to finding

---

[2] *See supra* note 1.

[3] Section 307.7 of the Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §562 includes the following provision:

. . . No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death, or was then actually dependent upon him and receiving from him a substantial portion of her support. . . .

whether or not this determination is supported by substantial evidence. *Painter v. Workmen's Compensation Appeal Board (Universal Cyclops)*, 91 Pa. Commonwealth Ct. 59, 496 A.2d 907 (1985).

The referee made the following findings:

*TWENTIETH:* This Referee has carefully considered the evidence in this case and finds that decedent's death resulted from the slippage of his vehicle on the ice covered roadway which ultimately ended in the tragic accident.

*TWENTY-FIRST:* This Referee further finds that while the decedent violated the company work rules by driving with a blood alcohol content of 0.104% that this violation is not the cause of the accident referred to, it having been caused by the icy conditions of the roadway.

There is substantial evidence in the record to support these findings. The referee relied on the testimony of two eyewitnesses, both of whom stated that Decedent's car slid out of control while negotiating an icy curve. The Pennsylvania State Police accident report lists an ice covered roadway as the cause of the accident. Moreover, Dr. Charles L. Winek, called by Employer and testifying by deposition, could not state unequivocally that Decedent's alcohol consumption was the cause of the accident but could say only that the blood alcohol content contributed to the accident.

It is the employer's burden to prove an injury or death due to intoxication, and this burden is greater than a mere preponderance. *Abbotts Dairies v. Workmen's Compensation Appeal Board*, 38 Pa. Commonwealth Ct. 423, 428, 393 A.2d 517, 519 (1978).

In light of the heavy burden on the employer here, and the incapacity of Employer's medical witness to establish intoxication as the cause, we cannot say that the referee erred in his factual determination that Em-

ployer's burden had not been met, but that the slipping of Decedent's vehicle on the ice covered roadway caused the accident and the death.

Our examination of our prior cases where intoxication has been found to be the cause of the injuries reveals that none of them have the distinguishing circumstances found in this case of poor driving conditions deemed by witnesses to be the cause. In *Abbotts Dairies,* the referee found the driving conditions were excellent. In *Carey v. Workmen's Compensation Appeal Board (General Electric Co.),* 72 Pa. Commonwealth Ct. 10, 455 A.2d 774 (1983), the claimant drove across railroad tracks in disregard of a barricade and flashing red lights. In *Hemer v. Workmen's Compensation Appeal Board (Miller Express),* 71 Pa. Commonwealth Ct. 174, 454 A.2d 225 (1983), an eyewitness saw claimant's truck weaving across the center line of the road before swerving into a ditch. The cause of the accident in each of those cases was obviously intoxication, simply because no other cause was present.

Accordingly, as previously noted, we cannot say that the referee erred when he determined that icy road conditions on a dangerous curve was the cause of this accident. Consequently, we find Decedent eligible for benefits and will affirm the referee's decision as to the estate claim.

We turn now to the question of the spouse's dependency. Section 307.7 of The Pennsylvania Workmen's Compensation Act[4] provides, in pertinent part:

> No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death, or was then actually dependent upon him and receiving from him a substantial portion of her support.

---

[4] *See supra* note 3.

Employer cites *S & S Associates v. Workmen's Compensation Appeal Board (Hochman)*, 77 Pa. Commonwealth Ct. 11, 465 A.2d 57 (1983) for the proposition that the payments an estranged husband makes on a jointly owned property in which he is living benefits primarily the husband and not the dependent spouse. But Employer's reliance upon *Hochman* is clearly misplaced, since that case is distinguishable on the basis of the circumstances of the separation. In *Hochman* the Court found that the Decedent had been separated from his wife for three years, had instituted divorce proceedings, removed his wife and daughter from his medical coverage, made no support payments since the date of separation and was actually living with another woman, all of which clearly established repudiation of the marriage relationship and the obligation of support which are the crucial factors in a widow's dependency determination. The Court in *Hochman* stated:

It has been held that under some circumstances a widow need not show receipt of actual support from her husband although she is living separately from him. See Confer v. Harbor R. Imbt, Inc., 191 Pa. Superior Ct. 74, 155 A.2d 382 (1959); Creasy v. Phoenix Utilities Co., 276 Pa. 583, 120 A. 659 (1923). In Confer, the wife had been separated from her husband for three months and during that time made numerous attempts to reconcile their differences. The court found that she never acquiesced in any action by the husband to repudiate his obligation of support. In Creasy, the husband left his wife for eighteen months seeking more remunerative employment. During that time, the husband did not contribute to his wife's support and attempted to repudiate his obligation of support. The wife instituted proceedings for support but the

husband avoided service. The court found that the wife had not acquiesced in the husband's attempt to repudiate his obligation.

*S & S Associates, Inc.,* 77 Pa. Commonwealth Ct. at 13-14, 465 A.2d at 59 (1983).

In the present case, we find no repudiation by the widow of the marriage relationship and no acquiescence by her in breach of the marital state, nor is there any indication that the husband sought to repudiate his support obligation. After the first separation the wife obtained a support order and saw to it that it was paid until she reconciled with her husband in order to care for him when he was ill. The husband never repudiated the marriage relationship, never filed for divorce or lived with another woman and, in fact, requested his wife to come back to him. The support order continued to be outstanding until the fatal accident. That the wife did not insist on its collection in the one-year period between the second separation and the fatal accident may be interpreted as an attempt to help a man who made only $85.00 per week get back on his feet after a severe illness, rather than acquiescence in repudiation of his support obligation.

We note that the marital home on which Decedent was making payments was initially purchased with a down payment made by the widow's daughter. As previously noted, Decedent only owned a tenancy by the entireties interest in one-half of the property, with the widow's children owning the other half. The Decedent was paying $224.11 per month on the house in lieu of making a $100.00 per month support order. The referee found that the Decedent was protecting his wife's and stepchildren's three-quarter interest in the approximately $30,000 equity existing in the property. Under the circumstances, we cannot say that the widow's decision to protect her and her children's property interest,

rather than receive $25.00 per week in support, was an acquiescence in any repudiation of a support obligation.

Accordingly, for the reasons stated, we affirm the order of the Board in approving the widow's claim for benefits.

## ORDER

NOW, December 9, 1987, the order of the Workmen's Compensation Appeal Board as of No. A-91150, dated November 21, 1986, is hereby affirmed.